The last case on today's calendar is Disabled Rights Action Committee v. Las Vegas Events. I request to reserve five minutes for rebuttal argument. This case concerns the definition of a place of public accommodation as it is used in Title III of the Americans with Disabilities Act. The applicable regulation clearly defines places of public accommodation to include places of exhibition or entertainment, which are facilities that are operated by a private entity. In 2000, this Court noted that the term operates, as it is used in the ADA, is extensive and would include sublesties, management companies, and any other entity that owns leases to or operates a place of public accommodation, even if the operation is only for a short time. Your Honors, I emphasize that this Court used the subjunctive for and not the conjunctive and when describing the breadth of the term operates. And I also note that this Court was quoting verbatim from the Department of Justice's Code of Federal Regulations. What case are you talking about now? It was Martin v. BGH. Martin, before it went to the Supreme Court. Yes, Your Honor. In 2001, this Court's holding was affirmed by the United States Supreme Court. The precise issue was never litigated in either place, as I understand it. The scope of the... But the question of whether the PGA was operating the golf courses just seemed to be assumed. It wasn't really litigated as such. Yes, Your Honor. It was assumed. It was necessary for the holding that was reached in both the Ninth Circuit and the Supreme Court. Is there a difference between using the facility and operating the facility? Yes, Your Honor. I would think there would be. I'm using this facility right now. I'm not operating it. I'm here and I'm using it. How much control do they have over the facility when they were in place? The Las Vegas events, Your Honor? Yes. Well, as far as the special seating arrangements, apparently... Again, there's been no discovery in this case. We do know that there are special seating arrangements in both Las Vegas events and in the State of Nevada's opposition briefs. They admit that all the seating at the ground level is taken out to make room for the horses and bulls that are part of the rodeo. And because a disproportionate amount of wheelchair-accessible seating is taken out, and my client's estimation that constitutes discrimination under the ADA. Who actually removes the seating area for the wheelchair? I don't know, Your Honor. No discovery was done. All we have are copies of the contracts between Las Vegas events and the State of Nevada, or its college system. Who sells the tickets? I don't know, Your Honor. I know that they're difficult to get. I know that they're in big demand. Rodeo aficionados really like to go to this. But I don't know who sells the tickets. And with regard to the Martin case, the district court was plainly made aware of the Martin case, and expressly said that in... Judge Benjamin said that in his opinion, if the Martin case involved publicly owned golf courses, for example, if the university owned the golf course, then this court's decision on Martin would have been reversed by the Supreme Court instead of affirmed. So I think that Judge McKibben really focused in on what's really... Assuming that you can only have one operator, which isn't necessarily so. Yes, Your Honor, that was also that assumption. And this is golf course contrary to the Code of Federal Regulations and this court's holding in Martin, which says even for a short time, you can be an operator even if you're doing it for a short time. In addition, Las Vegas events is clearly leasing, whether or not it's operating or not. Leasing is one of the specific types of activity that gets you into the operator category. Mr. Arvkonek, this is Judge Hawkins. Can you hear me? Yes, Your Honor, I can. What relief do you seek? What we'd like is... Not what you would like, what you seek. Your Honor, in this case, what we seek is that there be non-discriminatory changes in the seating. And in the final analysis, what we would like... Wait a minute, this is getting into the Rule 19 problem now. Is that... Do you need relief with regard... Isn't what you ultimately want is that NPR operate a non-discriminatory facility? Ultimately, yes, Your Honor. Whether it's here or somewhere else. That's the... So that the people in wheelchairs who want to see the rodeo... That's possible that the result of all that is there won't be an NPR in Las Vegas and nobody will get to see anything. But I assume that would still be a relief. Well, Your Honor, my client has a lot of members in Utah as well. And those who... It's a national event, Your Honor. You're right, it might not be in Las Vegas. But in essence, even for some of the members in Las Vegas, even if they have to fly or drive to Abilene, it's... It can be more accessible for them by having to do the drive than in certain events, in certain venues. The practical effect of what you seek would require events like this to meet the demand of the operator that they make the accommodations you seek, right? Your Honor, I don't know what the practical result will be in the end. Well, what you're... The relief you seek is to tell this... The organizers of this particular event that they can't conduct it absent adequate handicapped access and other ADA compliant measures, right? Your Honor, we'd like that. But quite frankly, I really don't know how far it can go. I don't know if there could be an affirmative duty upon the operators, upon Las Vegas events, to choose an entire venue that is accessible or a lesser level of relief if they can merely be enjoined for making the place less accessible, right? You have a specific prayer for relief. You're asking for a permanent injunction to join the defendants from discriminating on the basis of disability and specifically to cease operating the Thomas and Mack Center unless and until such facility is fully compliant with the Americans with Disabilities Act. So it seems to me what you're... It's a prayer for relief, which is I think what we're looking at for present purposes, is that they need to operate in compliance with Title III, whether in Thomas and Mack or somewhere else. They can't operate at Thomas and Mack except under... In compliance with Title III. That's your prayer. That was a prayer for relief, Your Honor. But in the course of litigation, we understand that the changes that are made make it less accessible and they'd be... The plaintiff would at least like to have that. They'd at least like to have the seating that has been retrofitted in the Thomas and Mack at the ground level not to be removed. Or if it is removed, then some compensatory... Now obviously, of course, that gets into the structural facility. Which is not subject to this act. That's right, Your Honor. So is what you seek through this litigation is to force an entity not subject to the act to comply with it? No, Your Honor. No. Why shouldn't I think that? Because we know we can't get that. Obviously, the broad social goals of the Disabled Rights Action Committee is to obtain as much accessibility as possible. But obviously, we can't under Title III effect a change. Title II is constantly being under assault and we don't know where that will be in three years. My understanding is that the Thomas and Mack Center complies with Title II. Is that right? That's not my understanding, Your Honor. Again, no discovery has been done in this case. Okay. Anything further? No, Your Honor. Would you like to stay the rest of your time for rebuttal? Yes, Your Honor. That's fine. May it please the Court. My name is Walter Ayers and I represent the University Community College System of Nevada and the State of Nevada in this particular case. I would like to have probably seven minutes, see if I can reserve the rest of the time for my colleagues. Sure. Just watch your time. Yes, sir. With regards to this, I think the bottom line to this particular case is that if the plaintiff is given the right to exclude the State from participating in suits brought against the State in basically our renders under Title III, that's going to do a couple things here. It's going to deny the State the right to be heard for one thing. That's going to impair the... Originally, this case wasn't brought against the State and the question, the predecessor issue is whether or not the State is a necessary party and if so, whether they're an indispensable party. Yes, Your Honor. And I'm getting to that. I'm trying to go to the bottom line first and go backwards. What it boils down to is it impairs the right to contract and the right to govern as a sovereign and to enter into contracts. Well, what happened here is... Let's take a hypothetical. Suppose somebody decides that they're going to operate a child care center and the State regulates very closely the physical attributes of a place where you can operate a child care center. So they go and they rent a building to have a child care center in, but it turns out that... The person who's renting to them is not responsible. They're not running a child care center. But it turns out that this is just an illegal place to hold a child care center, so they break the lease. Basically, the person that leaves has a cause of action for breaking the lease. But why are they... I very much doubt there would be an indispensable party in a suit regarding the validity of the child care center's operation at that place. Well, I think that when you talk about... I think they would be because it goes to the fact of the contract. They can't operate it under... It depends on whether you're... Well, but they need to fix the place up where they can leave. They have a choice. The lawsuit itself is not ordering the determination of the contract. It's simply saying, you know, either find a way to do it legally or you can't do it here. And the lawsuit itself is not invalidating anything in the contract. I mean, there's nothing in this contract that's invalid, right? That's correct. But I think the distinction you have to go back to is who operates is the definition of operator. Well, that's a different issue. You're mixing a lot of issues together. I mean, if you want to do it logically, we can start then with the question of who operates. But if we're... We don't get the indispensable or necessary party issue unless we think in the first place that Las Vegas Events is operating the facility. So if you want to talk about that, then talk about that. It's a different question. Okay. Well, as far as the operation facility, no, they don't operate the facility because they do not retain exclusive control over that facility. They don't... Only one person can operate it? Only one entity can operate a facility? No. No, more than one can. But in this case, it's a renter because if you look at the contract, they have not... Las Vegas Events does not have exclusive control over the facility. The facility is controlled by the Thomas & Mac. The tickets are sold by the Thomas & Mac. The Thomas & Mac has their ushers there. They're hired by Thomas & Mac for the aid of the disabled and that type of thing. They rent the facility... Can we tell that from the record now as it stands without any facts? I believe there's a quote in the record in a footnote that is in there and from the base core of the contract that when you look at the contract, all of the work is being done in the facility is being done by the... Did the contract say that the university retains exclusive control? I don't believe that that's in the actual contract itself, but when you read what is done under the contract... Mr. Ayers, I'm losing you. I'm sorry, Your Honor. When you look at what's identified in the contract itself as to who does what, the seating arrangements, that type of thing, they pay for us to move the seating arrangements. The Thomas & Mac does, in fact, do that under the contract. There's also a child care facility in there that they can operate that, but it's not... They don't operate the facility itself. They don't move the seats. The seats are moved... They would direct or have us move the seats simply because they need that large area for those large animals. It's not discriminatory to move those seats because nobody sits down there except for the cowboys that are riding those bulls. And there's no seat... Nobody can sit down there, period. Whether it's a disabled individual or not, there's simply no discrimination on that. Mr. Ayers? Yes, sir. I still don't understand how the university has a dog in this fight. My understanding is the... Just to take an analogous example, the National Football League has a phone book set of regulations which include handicap access if your city and your facility wants to hold the Super Bowl. And if you comply, you get to bid, and if they accept you, you get to have the Super Bowl and everything that goes with it. But that doesn't involve necessarily the entity. If the operation of an event causes the facility to no longer comply with ADA, and I think we have to assume that based on the bare complaint in front of us, you know, where's your dog in this fight? Because what it does is it subjects us to two different standards. It subjects us first to the standard... It's not subjecting you to anything except you're going to lose a lot of business. But you're not subjected to anything. Well, because the facility, if it complies under Title II, if it complies under Title II, which is program accessibility, we have to make it accessible to people who are disabled, whether they be disabled in wheelchairs, whether they be disabled orally, or visually disabled, we have to make that... If it's not complying with Title III, then entities that are covered by Title III may not be able to hold their events in your arena. It's not making you do anything except the economics of it, right? But the statute is not. No, it's which standard should be applied to a state facility. You're being responsive to what I'm saying. I'm sorry. I'm sorry about that. You're assuming that the fact that the entities that are running events in your... if they are in fact operating during that period are you, they're not you, they have their own obligations. And their obligation is to operate an accessible facility. Then it puts a state with an inconsistent obligation. Why? Because then we would have... Because to allow them in a facility, what we would have to do... All right, so you don't allow them in a facility. Then the state loses that income and it impairs our... Obligation. No, but it impairs our ability to contract, particularly when Title III clearly doesn't apply to us and Title II does. What about my hypothetical? What about the landlord in that instance? Does that landlord have a right to... a right to a facility that's not allowed to be there?  A private landlord. What difference does that make? A private landlord doesn't. Because if they lease out that entire facility... I wasn't giving an ADA example. I was giving an example of these child care regulations which do not cover the lessor. They only cover the persons operating the child care facility. Okay, if they only cover them in that circumstance then I believe you're... It's the same thing. No, because you're giving another set of standards there where here we have two sets of standards. One that applies to a sovereign and one applies to anybody and everybody else. There's a building code that just applies if you want to have a building and there's another one that applies if you want to have a child care center. Yes, and why the standards are set that way I don't know. I do know that in Nevada we've had to comply with those standards and the ADAG standards since the... I can't remember the date of the statute, but it's recent and you must understand this is likewise. I think the purpose behind making Title II applicable to the states is the fact that they realize that there were these older facilities this facility was built in 1983 prior to the time of the ADA and Nevada since at least 1973 has had to make those facilities accessible to disabled persons. And the question then becomes which set of standards apply. I mean, we recognize that they've always had to our facilities have always had to be accessible. The question is which standards apply and we've adopted the ADAG standards and that's program accessibility for any programs that are put on in that facility whether they be the National Finals Rodeo or any other persons who wish to rent that facility. So the National Public Rodeo then is entitled to come back to Nevada and just remove all the seating arrangements? No, just the ones that interfere in the bottom part of that arena. They only remove the ones in the very bottom of the arena where the large animals perform. To give another hypothetical there was a case I guess from the District of Columbia where a theater rented a part of a federal building. Let's say it was a state building. Can that theater operate a non-accessible a theater that is not complying with Article 3? The distinction there, Your Honor, is the fact that in that particular facility what happened was it was a federal facility and no standard. Suppose it was your building. That would be different? Suppose the state of Nevada owned the building and rented it out to a theater. Then we have to comply with Title 2. In other words, the theater owner would be entitled to come in and operate something that is not compliant with Title 3 just because they chose to put it in a state building? No, it has to comply with Title 2 which is program accessibility. Even though the operator is covered by Title 3 how do they get a percent as a result of their decision to put it into that building? They don't have to put it in that building they can put it in some other building. If it's a private operator if they take it to a private operator then Title 3 does apply. But in this instance it's a Title 2 situation and basically this is what we have to be sued under. And we're an indispensable party because it's going to impair our contracts. Do you want to save some time for your colleagues? Yes, I'm sorry. If I may yield the mic. Good afternoon, Your Honor. Elena Ucha. I'm counsel for Las Vegas Events. I perhaps go to the Fiedler case. And distinguish it which was I believe the D.C. the District Court of Columbia case that you were just speaking about. I see several distinctions in that case from the case here. First there was no issue there as to indispensable party about the disruption of a contract. So the case did not deal with the factual situation that we have here in which the purpose of this suit is to disrupt a contractual agreement. Drack has said that over and over and over again to the court. It has said its intention here is to dry up the fruits of this of the leasing of the Thomas & Mack. Its intention here is never to been never been to make the Thomas & Mack compliant. In Fiedler the purpose of that suit was to make the theater compliant. If Mr. Armconect and Drack had chosen to it could have sued Thomas & Mack or UCCSN under Title 2 and at the same time in the same suit sued LVE under Title 3 and then there would have had to be It would have been in the same spot but it doesn't matter because the standards are different and you're covered by Title 3 not by Title 2. That is correct Your Honor except for the DOJ illustrations on which Drack relies says that when you have an operation that may be joint and there is a specific example the state must comply with Title 2 and the private entity must comply with Title 3 That is the DOJ So you can comply with Title 3 and if this location doesn't comply with Title 3 then you can't have your offense there you have to have it somewhere else Except Your Honor that in that example the presumption is that the state or the entity that must comply with Title 2 and the entity that must comply with Title 3 will be part of the litigation and will have an opportunity to be heard and will have an opportunity to address together whether or not there is compliance Drack has adamantly refused I assume that if the state was willing to waive their sovereign immunity with respect to Title 2 we wouldn't be here they've never been given that opportunity because Drack is not willing to waive it with respect to Title 3 they invoke sovereign immunity as well as the argument that they're not covered by Title 3 Your Honor I do not believe that what Drack excuse me what the state said in response to the lawsuit that was filed against it by Drack was that we're not subject to them under Title 2 that was Drack's decision not the state's it's all very odd because ordinarily as I understand it in a Rule 19 situation when somebody is claiming that they have an interest in the lawsuit or when someone else is claiming it on their behalf they don't have to have a cause of action against them they come in as a Rule 19 defendant it's a world of its own in other words they just come in for purposes of relief unless they are indispensable but the question of whether or not you can have a Title 3 case against the state is really an irrelevant question I would agree that it is the least relevant question to this dispute the dispute is first whether or not LVE whether or not Thomas and Mack should have been sued that's LVE's position that it cannot address it cannot state what its obligations are it cannot address those obligations it cannot live up to its obligations it may be subject to let's go back to my hypothetical if your obligation is to comply with Title 3 we are now assuming away the first question of the case i.e. whether you are operating the case let's assume you are operating if you are operating you have an obligation to operate under Title 3 if you have contracted with a place that doesn't meet that requirement then you need to do something else you may own Thomas and Mack a ton of money for entering into a contract that you couldn't fulfill but aside from that I don't see what their interest is and they can get that money if you have to walk away because you are doing something illegal suppose you are running a gambling operation and you can't do it you can owe them money because you are tying up their space but you still can't run a gambling operation I think this goes to the public rights exception let me try to answer your question I think if we contracted to do something illegal I would agree with you there would be no question hypothetical assumption you are contracting to run something under title 3 is illegal you can't do it I don't believe that the allegation is that we are running something illegally you are doing something that you are not allowed to do this is an intermittent short term use of a facility 10 days a year I guess I'm saying why I think Thomas Mac is indispensable in this case because of the nature of the facts in Fiedler it was a continuous single operation where they sought compliance for the ongoing viewing of movies at a movie theater there was no question no one ever raised that question and so the need for that other party wasn't apparent in that case in this case by the nature of the use whether it's operation or not requires Thomas and Mac especially when DRAC says we intend to sue and we rather have Thomas Mac on there because you'd rather have them fix it up but you may have to do that your honor if that's the holding of this court we may have to do that but what I'm saying is by virtue of the nature of this contract Thomas and Mac is indispensable there are two court cases that have addressed this issue one out of the fifth circuit and one out of the district of Colorado where the court has said that in order to determine operator status you must determine the rights and obligations of the punto second and ninety one that's the district of colorado and it's all over this and fifteen after 1063 circuit case of the  them yes and and yes and you would also distinguish this case from a case that the court decided previously where uh... i believe your honor uh... was on the panel in which the court remanded so that the so that the party could amend their case to include a title two claim when a title three claim had been made and that was burgess versus carmichael and i believe your honor sat on that panel in this case track has repeatedly and adamantly refused to sue under title two it would have solved their problem this is really a disingenuous argument because you know they invoked their sovereign immunity they've already done it why are they going to not do it with respect to title two well this court has twice held more than twice i know we have but it's currently pending in the supreme court but the question is who's right or who's wrong but whether they're going to invoke it whether las vegas is going to invoke it if they want to stand up here now and tell us that they will not invoke their sovereign immunity in a title two then we can hear the rest of your argument but they're not going to do that and you know they are going to they've already invoked it so in the lawsuit that now exists i think your honor that in some ways that puts the cart before the horse and i want to make sure since i only have fifty seconds left that PRCA does have an opportunity to be heard so happy to answer your question if PRCA may have a minute or two i think that it is the plaintiff's obligation to bring a suit under clauses of action that allow that suit to be heard but in any event they don't want to they want the standards of title three to apply because they say that they're subject to them for ten days a year they wanted to apply without having and you can argue that that shouldn't be and that would come out on the operating end you say that we're not operating and that's a legitimate argument of what we need to solve in this case but it's not the indispensable argument a party argument it's a different argument i think they are intertwined in this case but i would agree with you your honor i'll let you have a few minutes elizabeth brennan your honor on behalf of the PRCA i have a few different comments on this issue before the court today that i think are very significant and cannot be overlooked the first one is that the PRCA entered a stipulation with drack on november twenty ninth two thousand one whereby drack voluntarily dismissed the PRCA from this case with prejudice if you look at the stipulation it specifically states that it shall constitute an order which may be appealed to the ninth circuit that is a final appealable order there was never a timely filed notice of appeal from that final order in fact there never was any notice of appeal ever from that stipulation in order so as a result this court does not have jurisdiction to reverse or deal with any issues contained in that stipulation in order and PRCA was dismissed with prejudice from this suit was there a judgment entered to that effect? excuse me your honor was there a judgment entered to that effect? it was earlier at the time of the original order it was signed by the judge the order was on november twenty ninth was there a 4B judgment still entered? no so even though your honor even if you were to assume that the notice of appeal that was eventually filed over a year later in this case constitutes an appeal of that prior order the november twenty ninth stipulation in order that still doesn't get draft there because draft did not brief that issue in its opening brief in this case in fact draft didn't even I'm not going to start out by saying that we don't have jurisdiction I don't think no but they should at least address somewhere in the opening brief that they are appealing the november twenty ninth 2001 stipulation in order and or the october you appeal a final judgment you appeal all the prior orders as well well there's nothing in the opening brief that suggests that they are appealing that and based on my understanding of the law they have waived their right to appeal that issue and this court doesn't have jurisdiction on it but even if you get to the september twenty seventh 2002 order that they did in fact file a notice of appeal from they the september twenty seventh 2002 order in that order the judge dismissed the second amended complaint against PRCA and Las Vegas events based on the law of the case doctrine and that is the order that they are clearly appealing from nowhere in draft's opening brief does it draft the law of the case doctrine not with respect to PRCA not with respect to Las Vegas events and because they have not briefed the law of the case doctrine the case is dismissed as to Las Vegas events and PRCA which were the only two parties in the case at that time so we submit that for those reasons because it wasn't briefed ever in the original reply brief that Las Vegas events and PRCA should be out in this case should be over one more point I would like to point out is that there is no abuse of discretion here with respect to what the court did in dismissing Las Vegas events and PRCA based on the second amended complaint and they haven't even briefed that they were the identical allegations in the first and the second complaints and draft hasn't explained to this court why this court should allow them to proceed with an amended complaint that was previously dismissed on the identical allegations your honor thank you I'm running over your time what is it that you need to tell us he will waive the sovereign immunity what do you need to tell us your honor sovereign immunity by the ninth circuit and Nevada state law cannot be claimed as to title 2 title 2 does apply isn't the issue currently pending in the Supreme Court there is a case but Nevada has adopted title 2 and so it does apply even under state law so title 3 I claim immunity because I don't think the court has jurisdiction and I'll leave it at that okay reply yes your honors first of all with regard to Ms. Brennan's comments we have no comment on the law of the case doctrine because as Judge Pez recognizes as this court has said before interlocutory orders are incorporated into the final judgment on appeal and it's those interlocutory orders and decisions that are the subject of the appeal with regard to the the Fiedler case and the distinction that Ms. Utah is drawing I can't really see how she can reconcile it with the ninth circuit decision in Martin which emphasizes that an operation for a short time makes someone an operator you start your brief very peculiarly with a plea that we publish this but if you're right about Martin there's no reason to publish it you already decided it with regard to that aspect you're right your honor it has been decided as far as what an operator is obviously this case involves the intertwining of a publicly owned a governmentally owned facility and private entities that are operating it for a short period of time as to what operating means no it doesn't your honor but it made a big impression on the district court as far as the district court's decision goes Judge McKibben really is dealing with it in a very broad way by saying it's not a place of public accommodation we're not just talking about the structure of the facility we're talking about whether or not someone provides interpreters for the deaf we're talking about all kinds of things related to Title III access not just wheelchair accessibility of course in this case in particular as Judge Hawkins pointed out the prayer for relief is pretty broad it says to stop them from operating the National Finals Rodeo at the Thomas and Mack Center I hope that the prayer for relief though doesn't doesn't limit the possible forms of relief on a motion to dismiss that would sort of be the reintroduction of form pleading actually I think that that draft is the one that's least likely to walk you into an indispensable party problem if you start asking the state to do something then you're going to have an indispensable party problem but in this case I don't know because there's been no discovery I don't know who's taking the seats out I thought when you read the agreement it seems to indicate that the state is taking the seats out it could be your honor I really don't know and obviously there's one agreement that or during the reconfiguration there's one agreement that's obviously not there and that is between the Professional Rodeo Cowboys Association and Las Vegas Events we have no idea what their agreement says as far as the the guidance that the Department of Justice has given in this matter I would like to emphasize Title II of the Technical Assistance Manual at 1.3000 and it says in many situations public entities have a close relationship to private entities that are covered by Title III with the result that certain activities may at least indirectly affect both titles and illustration one talks about a state park that has a restaurant a privately owned, operated restaurant there and I don't see where there is an implication that Ms. Uchoff points to that the state is a party to any kind of litigation looking at the agreement to go back to where we were before it appears that the agreement does say that special seating changeovers erection of stages, decorations, sound and lighting installations and etc. all have to be done by the licensing I have some clue anyway, go back so I I just want to emphasize that the Department of Justice has has spoken on this and I don't see and what of course is a constant refrain in the appellate's arguments is that the Disabled Rights Action Committee brought this case under Title III could have brought it under Title II yes, it's true we could have brought it under Title II at the time it was brought the Garrett case was pending before the Supreme Court where Title II's constitutionality was at issue at the time this was briefed the appellate's mentioned the Hazen decision which was questioning Title II's constitutionality and now as Ms. Uchoff pointed out at the court in supplemental citation I thought, but we're told that Nevada has the same rules anyway but I don't know how that helps because they could still invoke sovereign immunity if you brought a penchant claim they could still invoke sovereign immunity presumably I don't know if that's true or not I know that there is a Nevada statute that deals with structural accommodations and it doesn't is your problem fear of sovereign immunity or is it that the standards are different? are the standards different in any relevant way that matters here? uh the they're both a concern, your honor are the standards different in any relevant way that matters here? as Mr. Erick pointed out it's program accessibility it's program accessibility is the standard for Title II it's it's kind of hazy it's there's a lot of lot of leeway given to you know what they what they're trying to do and it respects the federalism concerns and all that Congress saw when it enacted the ADA back in 1990 so yes there is a distinction Mr. Erick is correct there that Title III is more stringent in some way that matters in this case? um in some way that matters in this case? I I think so because if if someone were to be renting or leasing a facility that is privately owned then under Title III there would be a higher standard of access required than under Title II so yes that's as far as physical access goes is there no further questions? no thank you so much we appreciate your arguments today we submit the case on the and we stand adjourned for the week thank you very much thank you thank you I
judges: Hawkins, Paez, Berzon